UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Leticia Rivera, *Plaintiff*, v. American Honda Motor Co., Inc., *Defendant.* | No. 24 CV 12883 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leticia Rivera filed this putative class action against Defendant American Honda Motor Co., Inc. for claims arising from defective infotainment systems in Hondas manufactured between 2020 and 2022. This case originated in the Central District of California before it was transferred to this district. [Dkt. 120.] Following a ruling on Honda's first motion to dismiss that narrowed the scope of the claims, *see* dkt. 48, three claims remain under Illinois law. Specifically, Rivera seeks both monetary and injunctive relief for: (1) an alleged violation of the Illinois Consumer Fraud and Deceptive Businesses Act (ICFA); (2) unjust enrichment; and (3) breach of express warranty. [Dkt. 138-1 at 7–8.][1]

Honda seeks dismissal under Rule 12(b)(1) of the First Amended Complaint "for lack of subject matter jurisdiction based on lack of standing and mootness grounds." [Dkt. 138 at 1.] Honda also argues that without individual standing, Rivera cannot pursue claims as a class representative. [*Id.*] For the reasons stated below, Honda's motion is granted in part and denied in part.

I.   **Background**

Rivera purchased a 2020 Honda Pilot from Schaumburg Honda in July 2020. [Dkt. 138-1 at 6.] Her purchase included a 3 year/36,000 mile New Vehicle Limited Warranty. [Dkt. 20, ¶¶ 55, 57.] According to Rivera, she paid $1,450 to extend this warranty in April 2022, a purchase that extended the warranty to 5 years/60,000 miles "for the components implicated in this lawsuit." [Dkt. 138-1 at 6; Dkt. 139-2 at 19; Dkt. 86-15, ¶ 21; Dkt. 95-16 at 6.] Rivera alleges that her Honda had "a defective infotainment system that produce[d] an intermittent, unpredictable, and loud popping and/or crackling noise from the speakers." [Dkt. 138-1 at 7; Dkt. 20, ¶ 2.] These issues were traced to "a loose connection in the MOST network, which

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

transmits audio and visual signals from and between the various components" of the infotainment system. [Dkt. 138-1 at 7.] Rivera testified that these issues could cause her "speedometer and other screens, including the screen displaying her navigation system, to malfunction and go 'blank' while she was driving." [Dkt. 139 at 9; Dkt 139-2 at 29.]

Between June 2021 and June 2023, Rivera took her Pilot to Honda dealerships for service without success. [Dkt. 139 at 9.] In June 2023, shortly after the ruling on the first motion to dismiss, Honda issued an NHTSA-administered recall "encompassing Rivera's vehicle and all the putative class vehicles in this case." [Dkt. 138-1 at 9.] The recall targeted connectivity issues in the MOST network that caused interruptions between images taken from vehicles' rear cameras to the display screen in the central console. The repairs also remediated the audio popping and crackling noises coming from the vehicles' speakers. [*Id.*] Pursuant to the recall, Honda dealerships provided free repairs to the MOST communication cables regardless of warranty status and outlined how Honda would reimburse owners who had already received repairs for this defect. [*Id.*] Rivera received the recall repair June 21, 2023, and it resolved her audio popping and crackling issues from that point forward. [*Id.*]

In January 2025, Rivera produced two letters dated November 18, 2024 from her insurance company, State Farm. [Dkt. 138-1 at 10.] The letters disclosed that Rivera had been in an accident earlier that month involving her Pilot. [*Id.*] State Farm declared the Pilot a total loss and compensated her under her insurance policy based on fair market value, which totaled about $14,700. [*Id.*; Dkt. 138-2 at 12–15.] According to Honda, this payout reflects no deduction for the alleged defect in the vehicle's infotainment system. [Dkt. 20 at 128–29.]

## II. Legal Standard

"[A] federal court's ongoing obligation to assure itself of its jurisdiction means that revisiting such matters is almost always on the table." *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). Rule 12(b)(1) provides the means for a defendant to challenge whether a court has subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III standing is a requirement for federal jurisdiction, and the doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"To establish the 'irreducible constitutional minimum' of standing, a plaintiff must allege she suffered (1) an injury in fact, (2) that is fairly traceable to the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Bost v. Ill. State Bd. of Elections.*, 114 F.4th 634, 639 (7th Cir. 2024) (citing *Lujan*, 504 U.S. at 560–61). It requires that the plaintiff demonstrate that she has a "personal stake in the case" sufficient to justify the exercise of federal judicial power. *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press

and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

A defendant can bring two types of standing challenges: facial and factual challenges, "each with its own procedural and evidentiary rules." *Flynn*, 39 F.4th at 952. First, "[a] facial challenge attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true." *Id.* Second, a factual challenge "asserts that there is *in fact* no standing." *Id.* (emphasis in original). To evaluate a factual challenge, "the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Bazile v. Fin. Sys. Of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020); *see also Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) ("Where, as here, plaintiff's complaint is facially sufficient but external facts call the court's jurisdiction into question, we 'may properly look beyond the jurisdictional allegations of the complaint and whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'") (quoting *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

For a factual challenge to standing, "the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to establish" standing. *Flynn*, 39 F.4th at 952 (emphasis in original). When a court considers a factual challenge to jurisdiction under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations.'" *Boim v. American Muslims for Palestine*, 9 F.4th 545, 558 (7th Cir. 2021) (*quoting Apex Digital Inc.*, 572 at 444). Courts must use caution to avoid "deciding merits questions when evaluating challenges to jurisdiction." *Id.* at 557.

The parties' briefs do not address which type of standing challenge is brought here, but because both parties cite to and rely on facts outside the complaint, *see e.g.*, dkt. 138-1 at 6–11, dkt. 139 at 7–10, the Court construes Honda's motion as a factual challenge to standing. Because standing is assessed on a claim by claim and relief by relief basis, *TransUnion*, 594 U.S. at 423, the Court first considers Rivera's standing as to monetary damages and then as to injunctive relief.

### III. Analysis

#### 1. Standing to Pursue Monetary Damages

Honda presses two reasons why Rivera lacks standing to pursue monetary damages, arguing that she "twice lost any stake in litigating any purported 'defect' in the infotainment system." [Dkt. 138 at 6.] First, it says that the no-cost, NHTSA-administered recall eliminates any overpayment injury because the "sole basis for 'overpayment' was an alleged 'cost of repair.'" [*Id.* at 13.] Second, it says that State Farm's fair market value insurance payout, which compensated Rivera for the full market value of her Pilot without deducting anything for an infotainment defect,

3

eliminates any overpayment damages as a matter of Illinois law. [*Id.* at 14.] Rivera disagrees, arguing her damages take the form of overpayment for her vehicle, something that caused her injury at the time of purchase. [Dkt. 139 at 10.]

A financial injury such as overpayment or diminished value is sufficient to establish standing. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.") *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 986–87 (N.D. Ill. 2013) (a financial injury is "established at the time of purchase" without weighing whether a purchaser "later was dissatisfied with the [product] and regardless of whether he would have purchased a substitute product.") Here, and consistent with this principle, there is no question that Rivera sufficiently alleges a financial injury in the form of overpayment at the time of purchase. *See Castillo v. Unilever United States, Inc.*, 2022 WL 704809, at *3 (N.D. Ill. Mar. 9, 2022) ("[T]hey would not have bought the TRESemmé products, or would have paid less for them, had they known of the alleged defects…At the pleading stage, that is enough to establish standing to seek a monetary remedy.") Indeed, prior to the case's transfer, Rivera sought to certify an Illinois class of Honda owners entitled to damages and monetary relief totaling the difference between the purchase price and the price class members would have paid if Honda had disclosed the infotainment defects. [Dkt. 84; Dkt. 86.] Rivera relied on an expert report to establish that she overpaid for her vehicle by $295. [Dkt. 138-1 at 10; Dkt. 86 at 23; Dkt. 86-2 at 16–17.]

Nevertheless, Honda argues that Rivera "lost" standing—or more precisely that her request for monetary damages became prudentially moot—because she was offered and accepted a recall that it says fully redressed any injury she suffered. [Dkt. 138-1 at 13 (arguing Rivera has been fully compensated for any alleged overpayment for her vehicle because the "recall eliminates any overpayment injury, when her sole basis for 'overpayment' was an alleged 'cost of repair.'")] "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action." *Stotts v. Community Unit School Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). The Seventh Circuit has described mootness and standing as "interrelated," explaining that mootness is "the doctrine of standing set in a time frame" because "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Taylor*, 875 F.3d at 854; *Stotts*, 230 F.3d at 991 ("Stotts' case lacks a live controversy; Stotts has graduated from high school and is no longer eligible to play high school basketball.")

To support its argument that the recall repairs fully fixed Rivera's infotainment system thereby mooting her claims, Honda cites non-binding circuit and district court cases dismissing claims when a recall fully repaired the defect at issue. *See e.g., Sugasawara v. Ford Motor Co.*, 2019 WL 3945105 at *6 (N.D. Cal. Aug. 21,

4

2019) (dismissing plaintiffs' state law consumer claims and explaining that while their overpayment theory of injury may have existed at the time of the purchase, they failed to allege the defect remained after the recall because post-recall vehicles performed as they would without the defect and the "pre-defect values have likewise been restored") (citing *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378–79 (6th Cir. 2015))); *Kommer v. Ford Motor Co.*, 2017 WL 3251598 at *5 (N.D.N.Y. July 28, 2017).

Rivera responds with out-of-circuit cases of her own where courts declined to apply prudential mootness if plaintiffs sought "legal relief that exceeds what defendants were offering through a recall." *Davis v. BMW of N. Am., LLC*, 2022 WL 3646571 at *3 (D.N.J. Aug. 23, 2022) (citing *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353 at *40 (S.D.N.Y. July 15, 2016) ("Because the recalls, even those sufficient to remedy the defects, do not compensate Plaintiffs fully for the damages sought here, the Court declines to exercise its discretion to dismiss the remaining claims as prudentially moot.")); *Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043 at *5 (D.N.J. Oct. 19, 2022) ("Plaintiffs clearly allege[d] diminution in value for their vehicles, which is a separate request for relief than a recall.") According to Rivera, that is the case here: she purchased her Pilot in 2020 "with an undisclosed, known defect" such that she may seek diminution in value damages based on overpayment at the time of sale. [Dkt. 139 at 14.]

The Court's research did not reveal any Seventh Circuit caselaw on this question, and the parties' briefs do not cite any. Though a close call, and bearing in mind the Court's obligation to use caution to avoid deciding merits questions when evaluating challenges to jurisdiction, it declines to dismiss the monetary damages claims on standing grounds. *Boim*, 9 F.4th at 557. Rivera alleges injury in the form of overpayment at the time of purchase; she maintains that the recall did not fully remediate that loss; and she points to evidence developed during expert discovery that supports a diminished value at the time of purchase. [Dkt. 86-2 at 16.]

The insurance payout does not change the analysis, at least for standing purposes. Honda argues that the Illinois Supreme Court's holding in *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 858–59 (Ill. 2005), makes clear that when a plaintiff transfers away a defective vehicle for value, "she has no 'actual damage' unless she can prove that the value she received was reduced to compensate for the defect." [Dkt. 138-1 at 14.] But reaching a decision on this question appears to be a challenge to the merits of Rivera's claim rather than a pure standing challenge appropriately raised by Rule 12(b)(1). *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (although plaintiffs had sufficiently shown Article III standing, "a district court could grant judgment on the pleadings, see Fed. R. Civ. P. 12(c), if none of the plaintiffs' injuries is compensable, as a matter of law, under the statutes on which they rely.") In this way, Honda's arguments concerning the state law elements for Rivera's ICFA, unjust enrichment, and breach of express warranty

5

claims appear to seek judgment as a matter of law. [Dkt. 138-1 at 14.] Given that a standing challenge brought by Rule 12(b)(1) is no substitute for a decision on the merits, the Court declines to reach the merits of the parties' state law arguments in this context. Rivera has standing to pursue monetary damages for her claims.[2]

### 2. Standing for Injunctive Relief

Standing is not dispensed in gross, *TransUnion*, 594 U.S. at 431, so finding that Rivera has standing to seek monetary damages does not guarantee that her standing extends to injunctive relief on her claims.

To have standing for prospective injunctive relief, a plaintiff "must face a real and immediate threat of future injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (cleaned up); *Kahn v. Walmart Inc.*, 107 F.4th 585, 606 (7th Cir. 2024) ("To support injunctive relief, Kahn needed to allege (and would ultimately need to prove) a likelihood of future injury…. Kahn has not adequately pled a likelihood of future injury to him sufficient to support Article III standing.")

Here, the only form of injunctive relief that survived the first motion to dismiss was what arose from the "plausible threat of future harm posed by the persistence of the defect in their vehicles." [Dkt. 48 at 10.] But Rivera no longer owns her Pilot, so she no longer faces a likelihood of future harm caused by a potential persistent defect in her infotainment system. No potential for future harm means that there is no harm that injunctive relief could rectify. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) ("However, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") (cleaned up) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495 (1974))). Rivera lacks standing to seek injunctive relief.

The cases Rivera cites do not compel a different result. First, most of the cases on which she relies, *see* dkt. 139 at 17–18, pre-date *TransUnion*'s admonishment that standing is not assessed in gross. *Shirley v. Reynolds Consumer Prods., LLC*, was a consumer fraud case based on mislabeling. 636 F. Supp. 3d 907, 915 (N.D. Ill. 2022). And *Laurens v. Volvo Cars of N. Am., LLC* did not decide whether the plaintiff had standing to pursue injunctive relief. Rather, the Seventh Circuit explained that it

---

[2] Regarding the express breach of warranty claim, Honda argues that the warranty promised to repair defective parts within 4 years or 50,000 miles in service, and the extended warranty covered electrical defects for 5 years or 60,000 miles from the original date of purchase, whichever comes first. [Dkt. 20, ¶ 285.] Honda argues that this language could not reasonably be interpreted to mean that the vehicle would be free from defects, but rather than "any defects will be *repaired* at no charge to the owner or lessee." [Dkt. 138-1 at 16 (emphasis added).] Rivera does not meaningfully engage with this argument, an omission that likely dooms her claim. Ultimately, though, the Court concludes that a decision on this claim is better addressed as a merits rather than a standing question.

was "premature for us to say" whether the plaintiff had standing for the injunctive relief part of the case. 868 F.3d 622, 625 (7th Cir. 2017).[3]

Finally, "Plaintiffs in a class action cannot rely on unnamed plaintiffs to satisfy Article III's standing requirement." *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 958–59 (N.D. Ill. 2016) (citing *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent.'") Allowing Rivera to seek injunctive relief simply because other members of the putative class might be able to seek injunctive relief is at odds with this principle. Because Rivera does not have standing to pursue injunctive relief, she cannot serve as a class representative as to injunctive relief.

## IV. Conclusion

For these reasons, the motion to dismiss is granted in part and denied in part. Rivera lacks standing to pursue injunctive relief. Honda's motion to dismiss is otherwise denied.

Enter: 24-cv-12883
Date: May 5, 2025

Lindsay C. Jenkins

---

[3] Rivera's citation to cases allowing an injunctive relief claim to proceed in the class action context where the named plaintiff lacked standing either predate *TransUnion* or did not involve injunctive relief arising from persistent defects. [Dkt. 139 at 17–18 (citing *Wacker Drive Exec. Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP*, 2019 WL 2270000, at *4 (N.D. Ill. May 28, 2019); *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, at *7 (N.D. Ill. Sept. 6, 2017).]

7